David E. Schlesinger (MN #0387009)
Charles A. Delbridge (MN #0386639)
**NICHOLS KASTER, PLLP**
80 South Eighth Street
4600 IDS Center
Minneapolis, Minnesota 55402-2242
Telephone: (612) 256-3200
Fax: (612) 338-4878
*schlesinger@nka.com*
*cdelbridge@nka.com*

Erika Birch (Bar No. 7831)
T. Guy Hallam Jr. (Bar No. 6101)
**STRINDBERG & SCHOLNICK, LLC**
1516 West Hays Street
Boise, ID 83702
Telephone: (208) 336-1788
Fax: (208) 287-3708
*erika@idahojobjustice.com*
*guy@idahojobjustice.com*

*Attorneys for Plaintiff Thomas Campbell*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **THOMAS CAMPBELL,**<br><br>  Plaintiff,<br><br>v.<br><br>**UNION PACIFIC RAILROAD CO.,**<br><br>  Defendant. | **COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>Case No. _____ |

Plaintiff Thomas Campbell (hereinafter "Campbell") by and through his attorneys, brings this action for damages and other legal and equitable relief, stating the following as his claims against Defendant Union Pacific Railroad Co. (hereinafter "Defendant" or "Union Pacific"):

1

## NATURE OF ACTION

1. This case arises under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, as amended ("ADA").

## PARTIES

2. Campbell is an individual who, during the events giving his to his claims herein, resided in Blackfoot, Bingham County, Idaho.

3. Defendant is a railroad carrier engaged in commerce in Idaho. Defendant's headquarters is in Omaha, Nebraska.

4. Defendant employs approximately 42,000 persons and runs upwards of 8,000 trains on 30,000 miles of track all across the country west of Chicago and New Orleans.

5. Defendant employs approximately 818 persons in Idaho.

## JURISDICTION AND VENUE

6. Campbell's claims arise under the ADA. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331.

7. This Court has personal jurisdiction over Defendant because Defendant maintains a significant business presence within the State of Idaho, and because the acts giving rise to Campbell's claim occurred in Idaho.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because the Court has personal jurisdiction over Defendant, and because a substantial part of the events or omissions giving rise to Campbell's claims occurred in this district.

## FACTUAL ALLEGATIONS

9. On October 30, 1994, when Campbell was the age of 16, he sustained a leg injury during a hunting accident, requiring amputation of his right leg six inches below the knee.

10. Campbell has used a prosthesis since the hunting accident.

11. Campbell's leg amputation qualifies as a disability under the ADA.

12. In January 2017, Campbell applied for a Trainman position with Defendant.

13. Defendant's online job application for the Trainman position asked, inter alia, "Do you have a disability?"

14. In response to the application's disability question, Campbell responded in the affirmative: "Yes." Campbell disclosed to Defendant his amputation and his use of a prosthesis during the application process.

15. On February 23, 2017, following submission of the online job application, Campbell interviewed for the Trainman position in Pocatello, Idaho.

16. On March 1, 2017, Campbell accepted Defendant's conditional offer of employment for a Trainman position, subject to passing a background check, a drug test, a physical ability test ("PAT"), and a medical examination

17. On March 2, 2017, Campbell passed the background check and drug test.

18. On March 7, 2017, Campbell passed the PAT, which involved lifting objects, moving objects, bending, twisting, hanging, and general movement to demonstrate the ability to fulfill the physical responsibilities of the Trainman position. Also on March 7, Campbell passed the medical examination, satisfying all conditions of the conditional employment offer.

19. April 3, 2017 was Campbell's start date of employment for the Trainman position.

20. Campbell's first four weeks as a Trainman consisted of training in the classroom as well as field training.

21. On May 3, 2017, during on-the-job training, Campbell and a co-worker were required to perform a Field Training Exercise ("FTX").

22. During the FTX, Campbell and the co-worker were observed by Defendant's managers, Sean Leatherbury and Tony Alcover, performing basic job duties, including riding on a train car, crossing tracks, operating switches, and walking on uneven terrain.

23. Once the managers were done observing, they approached Campbell and his co-worker to debrief them on their performance. As noted in documentation of the FTX, Campbell passed each of the tasks he was tested on.

24. After the debriefing, Leatherbury asked to talk with Campbell privately in his vehicle.

25. Leatherbury asked Campbell if he had any issues with his leg. Campbell lifted his pant leg and showed Leatherbury his prosthesis, to Leatherbury's apparent surprise.

26. Leatherbury drove Campbell back to the station, instructed Campbell to clock out, and told Campbell that he would not be able to return to work until Defendant's medical department had reviewed his case.

27. Campbell provided to Defendant letters from Idaho Prosthetics & Orthotics, which provided background information on Campbell's prosthetic leg and which stated Campbell had no restrictions in employment related to his prosthetic leg.

28. Campbell also offered to travel at his own cost to Defendant's headquarters in Omaha, Nebraska to conduct further testing.

29. Campbell did not receive pay during the six week period Defendant's medical department was conducting its "fitness for duty" review of Campbell's case.

30. In mid-June, 2017, Defendant completed its "fitness for duty" review. Defendant's Chief Medical Officer, Dr. John Holland, determined that because Campbell uses a prosthesis, he was permanently restricted from working as a Trainman (among other things), and could not return to his job.

31. On June 20, 2017, Terry Owens, Defendant's Director of Disability Management, sent Campbell a letter, enclosing a document titled "What are my options now that I am unable to return to my railroad job?"

32. In a telephone conversation, Dr. Holland told Campbell that even though Campbell was able to perform the job, he was at a "higher risk."

33. Unable to return to his Trainman job, Campbell applied for various open positions within Defendant, and was eventually offered a position as a Carman/Toolman in Elko, Nevada.

34. Elko is approximately five hours away from Campbell's home and family in Blackfoot, Idaho.

35. The compensation for the Carman/Toolman position is less than Campbell was earning as a Trainman.

36. Nevertheless, Campbell accepted the lower-paying Carman job. He now lives in Elko, Nevada, away from his wife and daughters, returning home only during his days off.

37. On or about July 17, 2017, Campbell filed a Charge of Discrimination with the Equal Employment and Opportunity Commission ("EEOC"), alleging Defendant discriminated against him in violation of the ADA.

38. On or about August 29, 2018, the EEOC issued a Notice of Right to Sue. Having exhausted his administrative remedies, Campbell now brings the present action.

**FIRST CAUSE OF ACTION**

**VIOLATIONS OF THE ADA: DISABILITY DISCRIMINATION**

39. Section 12112(a) of the ADA prohibits employers from discriminating against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

40. The ADA defines a disability as (A) a physical or mental impairment that impairs one or more major life activities; (B) a record of such impairment; or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(1).

41. At all relevant times, Campbell was an individual with a disability under the ADA.

42. At all relevant times, Campbell had the requisite skill, experience, education and other job-related requirements for the position, and was therefore a qualified individual under the ADA.

43. At all relevant times, Campbell could perform the essential functions of his position with or without accommodation. Moreover, Campbell passed all physical and medical examinations required by Defendant to ascertain whether an employee could perform those functions.

44. Defendant removed Campbell from his Brakeman position on the basis of his disability, violating 42 U.S.C. § 12112.

45. Because Defendant violated 42 U.S.C. § 12112, Campbell has suffered and will continue to suffer loss of income, emotional distress, and other damages in an amount in excess

of $75,000. Campbell is also entitled to attorneys' fees and costs incurred in connection with this claim.

46. Defendant committed the above-alleged acts with reckless or deliberate disregard for the rights of Campbell. As a result, Campbell is entitled to punitive damages.

## SECOND CAUSE OF ACTION

### VIOLATIONS OF THE ADA: FAILURE TO ACCOMMODATE

47. At all relevant times, Campbell was an individual with a disability under the ADA.

48. Campbell informed Defendant of his disability.

49. Defendant failed to engage with Campbell in the interactive process.

50. Discriminating against a qualified individual with a disability includes:

[N]ot making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity[.]

42 U.S.C. § 122112(b)(5)(A).

51. Defendant failed to make reasonable accommodation to Campbell's disability, in violation of the ADA.

52. Because Defendant violated the ADA, Campbell has suffered and will continue to suffer loss of income, emotional distress, and other damages in an amount in excess of $75,000. Campbell is also entitled to attorneys' fees and costs incurred in connection with these claims.

**53.** Defendant committed the above-alleged acts with reckless disregard or deliberate disregard for the rights and safety of Campbell. As a result, he is entitled to punitive damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Thomas Campbell prays for judgment against Defendant Union Pacific as follows:

1. That the practices of Defendant complained of herein be determined and adjudged to constitute violations of the ADA;

2. That Defendant and its directors, officers, owners, agents, successors, employees and representatives, and any and all persons acting in concert with them, be enjoined from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

3. For an award of damages arising from loss of past and future income, emotional distress, and other compensatory damages, all in an amount in excess of $75,000;

4. For an award of pre-judgment interest pursuant to law;

5. For an award of Campbell's costs, disbursements and attorneys' fees pursuant to law;

6. For all relief available under the ADA;

7. For such other and further relief available by statute;

8. For such other and further relief as the Court deems just and equitable.

DATED this 20th of November, 2018

**NICHOLS KASTER, PLLP**

  /S/ David E. Schlesinger
David E. Schlesinger*
Charles A. Delbridge*
*pro hac vice application forthcoming*

**STRINDBERG & SCHOLNICK, LLC**

  /s/ T. Guy Hallam Jr.
Erika Birch
T. Guy Hallam, Jr.