UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| THOMAS CAMPBELL,<br><br>Plaintiff,<br><br>v.<br><br>UNION PACIFIC RAILROAD CO.,<br><br>Defendant. | Case No. 4:18-cv-00522-BLW<br><br>**MEMORANDUM DECISION<br>AND ORDER** |

## INTRODUCTION

Pending before the Court is Union Pacific Railroad Co.'s Motion for Summary Judgment. Dkt. 21. The motion is fully briefed and ripe for decision. The Court held oral argument on June 11, 2020. After careful consideration of the briefing and arguments, for the reasons that follow, the Court will deny the motion.

## BACKGROUND

Thomas F. Campbell, III sustained a gunshot wound during a hunting accident at the age of 16, resulting in a below-the-knee amputation of his right leg. *Campbell Depo.,* Dkt. 21-4 at 9-10. Despite the injury, Campbell recovered and uses a prosthesis which allows him to live an active lifestyle. *Campbell Decl.*, Dkt. 25-13 at ¶2. Campbell has worked a number of labor intensive jobs, including work as an auto mechanic, wastewater farm operator, and owner of a sporting

goods store. Dkt. 21-4 at 14-18.

On January 10, 2017, Campbell applied for a Trainman position with Union Pacific. *Id.* at 21. Union Pacific is a large freight-hauling railroad. *Holland Dep.*, Dkt. 21-5 at 6. Campbell interviewed for the position on February 26, 2017 and received a conditional offer from Union Pacific on February 27, 2017. *Id.* at 28-29. In his medical questionnaire, Campbell disclosed the details of his amputation. *Id.* at 31.

Union Pacific's offer of employment was conditioned upon Campbell's completion of a background check, drug test, physical ability test ("PAT"), and medical examination. *Id.* Dr. Fowler conducted Campbell's medical examination on March 7, 2017. *Id.* at 34-35. During the examination, Dr. Fowler noted that Campbell had a below-the-knee amputation. *Pl.'s SOF*, Dkt. 25-1 at 10-11. The PAT tested Campbell's arm and leg strength, along with his ability to hang from the equipment. Dkt. 21-4 at 151-152. Campbell also cleared Union Pacific's background check and passed a drug trust. *Id.* at 39.

On April 3, 2017, Campbell began his field training at Union Pacific's Pocatello, Idaho railyard. *Id.* at 40-43. During his training, Campbell was observed by Jerome Czyzewski, a Senior instructor at Union Pacific, and two other instructors. *Czyzewski Dep.*, Dkt. 21-10 at 9-11. On May 3, 2017, Sean

**MEMORANDUM DECISION AND ORDER - 2**

Leatherbury, Union Pacific's Director of Road Operations, observed Campbell walking with a limp while performing his field training exercises. *Leatherbury Dep.*, Dkt. 21-11 at 20-21. Leatherbury asked to speak to Campbell privately, and during that conversation Campbell showed Leatherbury his amputation and prosthesis. *Id.* at 22. Leatherbury reported that he was concerned for Campbell's safety, and asked him to return home for the day. *Id.* at 22-23. Leatherbury then completed a Supervisor Initiated Fitness-for-Duty Request Form. *Id.* at 26-37:8.

On May 5, 2017, Theresa Rodino, Union Pacific's Fitness-for-Duty Occupational Health Nurse, informed Campbell that he must undergo a Fitness-for-Duty review before he could return to work, and requested that he provide copies of his medical records regarding his amputation and prosthesis. Dkt. 21-4 at 81. On May 10, 2017, Union Pacific received Campbell's medical records and a letter from Campbell's prosthetist. *Id.* Rodino asked Dr. John P. Holland, Union Pacific's Chief Medical Officer, to review the information she received from Campbell. *Holland Dep. II*, Dkt. 21-7 at 10-13, 34-35.

Over the course of the next month, Dr. Holland reviewed Campbell's Fitness-for-Duty evaluation. *Id.* at 6, 17, 30, 57-63. On June 15, 2017, Dr. Holland completed his Fitness-for-Duty examination of Campbell, which resulted in the imposition of permanent work restrictions. *Id.* at Ex. 4.

Campbell applied for and was offered a position as a Carman in Elko, Nevada. Dkt. 21-4 at 106-10. To obtain this position, Union Pacific required Campbell to undergo a second Fitness-for-Duty evaluation. *Id.* at 111-12. After evaluating Campbell a second time, Dr. Holland – with the assistance of Doris Burns – cleared Campbell to work as a Carman in Elko because of the availability of fall protection systems for this position. Dkt. 21-7 at 3.

In August 2017, Campbell began working as a Carman in Elko, Nevada. Dkt. 21-4 at 117-18. On June 16, 2019, an employee with higher seniority bid for Campbell's position in Elko, causing Campbell to be laid off. *Id.* at 120. On July 3, 2019, Union Pacific recalled Campbell to service as a Carman in Elko. Dkt. 25-13 at ¶11. This position required a Commercial Driver's License (CDL). *Id.* Campbell applied for and received this CDL, which required his passage of a medical examination. *Id.* at ¶12. However, because of his work restrictions, Campbell is prohibited from operating commercial vehicles for Union Pacific. *Id.* Campbell has since been unable to return to work at Union Pacific. *Id.* at ¶13.

Union Pacific argues this case is about protecting the safety of employees and the general public by ensuring that individuals working in safety critical positions do not create threats to themselves or others. Dkt. 21-1 at 1. Union Pacific further argues Campbell's ADA claims must be dismissed, as a matter of

law, for three reasons: "(1) Campbell is not qualified for his position as a Trainman because he cannot safely perform the essential functions of his job; (2) Campbell's below knee amputation creates an unacceptable risk that he will fall or trip while performing in a safety-critical position and, thus, he poses 'a direct threat to the health or safety of other individuals in the workplace' and himself; and (3) there is currently no available reasonable accommodation that would allow Campbell to safely perform the essential functions of the Trainman job." Dkt. 21-1 at 2. The Court will analyze the merits of the motion below.

## STANDARD OF REVIEW

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported

motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). There must be a genuine dispute as to any *material* fact—a fact "that may affect the outcome of the case." *Id.* at 248.

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. *Id.* at 255. Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The Ninth Circuit has set a high standard for the granting of summary judgment in employment cases, as the ultimate question of discrimination "is one that can only be resolved through a searching inquiry – one that is most appropriately conducted by a factfinder, upon a full record." *Schnidrig v. Columbia Mach., Inc.*, 80 F.3d 1406, 1310 (9th Cir. 1996) (internal citations omitted). Thus, a "plaintiff in an employment discrimination action need produce very little evidence in order to overcome an employer's motion for summary judgment." *Santillan v. USA Waste of California*, 853 F.3d 1036, 1042 (9th Cir. 2017) (internal citation omitted).

## ANALYSIS

Union Pacific argues Campbell fails to state a claim under the Americans with Disabilities Act (ADA) because he is not qualified for the Trainman position, and no accommodation exists that would allow him to safely perform the functions of the job. Dkt. 21-1 at 3-4. Union Pacific argues also that, if left in the Trainman position, Campbell posed a direct safety threat to himself, his colleagues, and the public and therefore Union Pacific had legitimate, non-discriminatory safety-based reasons to rescind the job offer for the position. *Id.*

## 1.    Legal Standard

The ADA prohibits discrimination by an employer "against a qualified individual with a disability because of the disability." 42 U.S.C. §12112(a). To establish a prima facie case of discrimination under the ADA, Campbell must show that: (1) he is disabled within the meaning of the ADA; (2) he was a qualified individual who was able to perform the essential functions of the Trainman position; and (3) Union Pacific denied him the Trainman job because of his disability. *See Allen v. Pac. Bell,* 348 F.3d 1113, 1114 (9th Cir. 2003).

If Campbell establishes a prima facie case, the burden shifts to Union Pacific to provide evidence of legitimate non-discriminatory reasons for the challenged action. *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1093 (9th Cir. 2001).

If Union Pacific meets that burden, Campbell must then "raise a triable issue of material fact as to whether the defendant's proffered reasons . . . are mere pretext for unlawful discrimination." *Hawn v. Exec. Jet Mgmt.*, 615 F.3d 1151, 1155-56 (9th Cir. 2010).

Union Pacific's allegation that Campbell posed a "direct threat" if left in the Trainman position is an affirmative defense to an ADA claim. *See Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1247 (9th Cir. 1999). Even if Campbell raises genuine issues of material fact as to his qualified status, summary judgment would be appropriate if Union Pacific shows Campbell posed a direct threat and there is no genuine dispute as to that fact. *See id*. As such, Union Pacific bears the burden of proving Campbell posed "a direct threat to the health or safety of other individuals in the workplace." 42 U.S.C. § 12113(b); 29 C.F.R. § 1620.2(r); *see Nunes* at 1247.

At the summary judgment stage, there is no dispute that Campbell can establish he is disabled within the meaning of the ADA. *See* Dkt. 21-1 at 4 n. 1. There is also no material dispute that Union Pacific removed Campbell from the Trainman position because of his disability.[1] Therefore, the Court will turn to the

---

[1] An ADA discrimination plaintiff bringing a claim under 42 U.S.C. § 12112 must show (Continued)

disputed second factor—whether Campbell is a qualified individual with a disability.

### A.    Qualified Individual with a Disability under the ADA

"Qualified individual with a disability" is defined under the ADA as an "individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); 29 C.F.R. § 1630.2(m). To prove that he is qualified, Campbell must show (1) he satisfied the "requisite skill, experience, education, and other job-related requirements" of the Trainman position, and (2) he could "perform the essential functions of such position with or without reasonable accommodations." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 990 (9th Cir. 2007) (internal citation omitted).  If Campbell cannot show he could perform the essential functions of the Trainman position, even with a reasonable accommodation, then the ADA's employment protections do not apply. *Cripe v. City of San Jose*, 261 F.3d 877. 884–85 (9th Cir. 2001).

For purposes of summary judgment, the parties do not generally dispute that

---

that the adverse employment action would not have occurred *but for* the disability. *Murray v. Mayo Clinic*, 934 F.3d 1101, 1105 (9th Cir. 2019), cert. denied, No. 19-995, 2020 WL 1978957 (U.S. Apr. 27, 2020) (overruling the "motivating factor" standard of *Head v. Glacier Nw. Inc.,* 413 F.3d 1053, 1065 (9th Cir.2005)).

Campbell satisfied the requisite skill, experience, education, and other job-related requirements of the Trainman position. Aside from this, the Court finds the fact that he was hired for the position direct evidence proving this portion of the element. Therefore, the dispute lies in whether Campbell could perform the essential functions of the job, with or without accommodation. *See* Dkt. 25 at 13. Because Union Pacific is challenging Campbell's ADA claim, it must produce evidence of the essential functions of the Trainman position. *Bates*, 511 F.3d at 991. "Essential functions" are "the fundamental job duties of the employment position." 29 C.F.R. § 1630.2(n)(1).

### (1)    Essential Functions of the Trainman Position

Here, the essential functions of the Trainman job are largely undisputed. *See Pl.'s Resp.*, Dkt. 25 at 13. According to Union Pacific, the Trainman job description states that Trainmen must "[r]ide on moving cars by holding onto grab irons and standing on ladder steps" and "walk on ballast and ground the length of the train to distances of over a mile." Dkt. 21-1 at 5. Union Pacific adds the requirement of being "able to maintain balance and coordination while climbing ladders 12 feet or more and stairs occasionally, while walking on ballast and ground frequently, and working 12 feet or more above ground occasionally. *Id.* Trainmen must also be able to ride the "sill step" of a railcar, which has limited

clearance. *Id.* While riding the sill step, a Trainman must perform a "shove maneuver" which involves pushing railcars toward the locomotive. *Id.* During this maneuver, the freight car accelerates in all directions. *Id.*

Notably, however, Union Pacific considers the ability to safely perform all of the above tasks an essential function of the position. *Id.* at 6. Union Pacific argues Campbell cannot present sufficient evidence to meet his burden of proof that he can safely perform these duties. *Id.* at 6. In response, Campbell argues essential functions are the fundamental duties of the position and do not include marginal functions or "qualifications standards" such as physical, medical and safety requirements. Dkt. 25 at 12.

The only case cited by Union Pacific to support its argument is *Nall v. BNSF Ry. Co.*, where the Fifth Circuit affirmed a district court determination that, due to the high-risk nature of the daily duties of a Trainman, safely performing those functions was part and parcel of the performing the functions themselves. 2017 WL 607126, at *16 (S.D. Tex. Feb. 14, 2017), *aff'd in part, rev'd in part and remanded*, 912 F.3d 263 (5th Cir. 2018), *withdrawn from bound volume, opinion withdrawn and superseded*, 917 F.3d 335 (5th Cir. 2019), *and aff'd in part, rev'd in part and remanded*, 917 F.3d 335 (5th Cir. 2019). In response, Campbell cites *Bates v. United Parcel Service, Inc.*, a Ninth Circuit decision that clarified the

difference between "essential functions" or basic duties and "qualifications standards" such as "personal and professional attributes that may include "physical, medical [and] safety" requirements. 511 F.3d 974, 990 (9th Cir. 2007). Indeed, the EEOC regulations include a distinction between "essential functions" and "qualification standards."

> Qualification standards means the personal and professional attributes including the skill, experience, education, physical, medical, safety and other requirements established by a covered entity as requirements which an individual must meet in order to be eligible for the position held or desired.

29 C.F.R. § 1630.2(q).

According to the EEOC regulations, "essential functions means the fundamental job duties of the employment position the individual with a disability holds or desires. The term "essential functions" does not include the marginal functions of the position." 29 C.F.R. § 1630.2(n)(3). Evidence used to determine if a function is essential may include written job descriptions, the employer's judgment as to which functions are essential, the amount of time spent performing the function, the consequences of not requiring the employee to perform the function, and the current work experience of those in similar jobs. *Id.*

The Ninth Circuit explained why the distinction between "essential functions" and "qualification standards" is crucial in the context of an ADA claim:

> The statute does not require that a person meet each of an employer's established "qualification standards," however, to show that he is "qualified." And, indeed, it would make little sense to require an ADA plaintiff to show that he meets a qualification standard that he undisputedly *cannot* meet because of his disability and that forms the very basis of his discrimination challenge.

*Bates* at 990 (emphasis in original).

As such, Campbell need not prove he was able to safely perform the essential functions of the Trainman position to establish his prima facie case. Instead, the Court will consider whether Campbell's disability posed a threat to himself, other employees, or the public, within the context of Union Pacific's justification for the employment action and its "direct threat" affirmative defense.

### (2)    Evidence of Ability to Perform Essential Functions of the Position

As evidence of his ability to perform the essential functions of the Trainman position, Campbell points to his prior work history in a physically strenuous position, professional and expert opinions concluding he is not restricted by his prosthesis, video and photo evidence showing Campbell walking on uneven terrain and climbing ladders without issue, and evidence that he performed many of the Trainman duties without incident during his training. Dkt. 25 at 2-3; 13-14. Campbell argues this evidence, at minimum, raises a material factual question regarding the whether he can perform the essential functions of the Trainman position. *Id.* at 14.

MEMORANDUM DECISION AND ORDER - 13

Union Pacific critiques Campbell's qualification evidence as "lay opinion evidence," and claims Campbell's argument that he lives an active lifestyle of hunting and hiking does not relate to his ability to safely perform the essential functions of the Trainman position. Dkt. 26 at 3-4. Union Pacific further questions the credibility of Campbell's prosthetist, who stated Campbell has no physical restrictions from his amputation, by noting the prosthetist is not a doctor. 26 at 3-4. Union Pacific specifically argues Campbell's evidence does not support his claim that he can "safely" perform the essential functions of the position. *Id.* Instead, Union Pacific argues Leatherbury's observation of Campbell's "severe limp" and his subsequent decision to fill out a Fitness-for-Duty form suggests Campbell is unable to safely perform the essential functions of the position. Dkt. 21-1 at 6-7. Additionally, Union Pacific cites Dr. Holland's conclusion in the Fitness-for-Duty report that Campbell is not fit to work as a Trainman as evidence of Campbell's lack of qualification. *Id.* at 7-8. Campbell, however, disputes the legitimacy and reasonableness of Dr. Holland's report, arguing that Dr. Holland never physically examined Campbell or personally spoke with Campbell's prosthetist. Dkt. 25 at 15.

The Court finds that there is a triable issue of fact whether Campbell was able to perform the essential functions of the Trainman position. In resolving a summary judgment motion, the court does not weigh the evidence of the non-

moving party against the evidence of the moving party. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). Rather, "[c]redibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Further, Campbell has produced expert testimony on the issue of his ability to perform the essential functions of the Trainman position, which "is itself sufficient to create a genuine issue of disputed fact sufficient to defeat a summary judgment motion." *See Thomas v. Newton Intern. Enterprises*, 42 F.3d 1266, 1270 (9th Cir. 1994). Thus, there is a genuine dispute of material fact regarding whether Campbell could perform the essential functions of the position.

### B.   Reasonable Accommodations through the Interactive Process

"[E]mployers are required to engage in an interactive process with employees in order to identify and implement appropriate reasonable accommodations." *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1114 (9th Cir. 2000) *vacated on other grounds*; *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391 (2002); *see also* 29 C.F.R. § 1630.2(o)(3); 29 C.F.R. Pt. 1630, App. § 1630.9. To determine the appropriate reasonable accommodation, employers should "meet with the employee [or applicant]. . . , request information about the condition and what limitations the employee has, ask the employee what he or she specifically wants,

show some sign of having considered employee's request, and offer and discuss available alternatives when the request is too burdensome." *Barnett*, 228 F.3d at 1115 (internal quotation omitted). If there is a genuine dispute as to whether the employer engaged in good faith in the interactive process, the employer cannot prevail at the summary judgment stage unless the employer can prove that no reasonable accommodation was available. *Snapp v. United Transportation Union*, 889 F.3d 1088, 1095 (9th Cir. 2018).

Union Pacific argues that (1) it engaged in the interactive process with Campbell, (2) no reasonable accommodation exists that would enable Campbell to work safely as a Trainman, and (3) Union Pacific did accommodate Campbell by offering him a Carman position. *Def.'s Br.*, Dkt. 21-1 at 14- 16.

As evidence of the interactive process Union Pacific points to a June 19, 2017, conversation between Theresa Rodino, Union Pacific's Fitness-for-Duty Occupational Health Nurse, and Campbell. *Def. SOF*, Dkt. 21-2 at 19. During that call, Rodino informed Campbell of Dr. Holland's conclusion that he was permanently restricted and gathered information for Union Pacific's Disability Management Department. *Id*. Campbell disputes the sufficiency of Union Pacific's efforts, arguing that engaging in the interactive process on one occasion is not a good faith effort to find an appropriate accommodation. Dkt. 25 at 18.

**MEMORANDUM DECISION AND ORDER - 16**

Union Pacific also asserts that there is no reasonable accommodation that would enable Campbell to work safely as a Trainman. Dkt. 21-1 at 14-15. Union Pacific argues that, because fall protection is not available for the Trainman position, the only potential accommodation is to remove all duties requiring Campbell to work on or near live trains or on the tracks. *Id*. This would exempt Campbell from performing essential job functions. *Id*. In support of the assertion this would not be a reasonable accommodation Union Pacific cites to *Dark v. Curry County*, where the Ninth Circuit held that an employer is not required to exempt an employee from performing essential functions or to reallocate essential functions to other employees. 451 F.3d 1078, 1089 (9th Cir. 2006). Union Pacific also points out that Campbell has not identified an accommodation that would allow him to safely perform the essential functions. Dkt. 21-1 at 15. Campbell argues there are factual questions regarding whether Campbell can safely perform the duties of a Trainman, and that Union Pacific has not properly identified and considered whether Campbell had any limitations that required accommodation. *Pl.'s Br.* at 18, Dkt. 25 at 18-19.

Union Pacific also argues that Campbell was accommodated when he was offered a Carman position in Union Pacific's Elko facility. Dkt. 21-1 at 15. In addition, Union Pacific supplied a vocational resource manager to assist Campbell

in finding a job that would work with his restrictions. *Id.* at 15. Campbell, however, disputes that this satisfies Union Pacific's obligation to reasonably accommodate Campbell's disability. Dkt. 25 at 18-19. Campbell argues that he was merely allowed to compete for an open position, which is which does not constitute a reasonable accommodation under the ADA. *Id.*

The Court finds there is a triable issue of fact regarding whether Union Pacific engaged in the interactive process in good faith. The interactive process should be a cooperative dialogue between the employer and the employee to identify the precise limitations resulting from the disability and "explore the existence and feasibility of reasonable accommodations." *See Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1114-1116 (9th Cir. 2000). Union Pacific has not met the burden of establishing there is no dispute of fact as to whether the interactive process was sufficient in this case. Thus, summary judgment is available only if a reasonable finder of fact must conclude there was no reasonable accommodation available. *See Dark v. Curry County*, 451 F.3d 1088 (9th Cir. 2006).

As explained above, there is a genuine issue of material fact regarding what limitations resulted from Campbell's prosthesis. Thus, the Court finds that there is a material dispute of fact as to what accommodation may be available. Therefore, Union Pacific has not met its burden of proving there is no material dispute of fact

as to whether a reasonable accommodation was available to allow Campbell to work in the Trainman position.

Further, Campbell has raised sufficient evidence to establish a dispute of material fact as to whether Campbell was given a reasonable accommodation when he was offered the Carman position. Campbell already had the right to apply for other jobs with Union Pacific, thus, allowing him to interview for the carman position was not a reasonable accommodation as a matter of law. *See Barnett*, 228 F.3d at 1117.

### C.    Legitimate Non-Discriminatory Reason

Union Pacific argues that the revocation of Campbell's offer of the Trainman position was based on legitimate, non-discriminatory reasons. Dkt. 21-1 at 9. The proffered reason for revoking Campbell's job offer is that it was necessary to ensure the safety of the public and Union Pacific employees. *Id.* at 10.

If a plaintiff establishes a prima facie case of employment discrimination, the Court must determine whether the employer has articulated some legitimate, nondiscriminatory reason for the challenged action. *Hawn v. Executive Jet Management, Inc.*, 615 F.3d 1151, 1155 (9th Cir. 2010). The employer's reason for the challenged action must "disclaim[ ] any reliance on the employee's disability in having taken the employment action." *Dark v. Curry County*, 451 F.3d 1078, 1088

(9th Cir. 2006).

In this case, Union Pacific argues that the Trainman position is a safety-critical position and the risk of Campbell slipping or falling posed a threat to the safety of the public and Union Pacific employees. In response, Campbell points out that that the underlying basis for Union Pacific's safety concerns is Campbell's disability. The Court finds that Campbell has raised a material issue of fact regarding whether Union Pacific provided a legitimate, nondiscriminatory explanation for withdrawing Campbell's job offer for the Trainman position that disclaimed any reliance on Campbell's disability.

### D.    Direct Threat Defense

Even though Campbell raised a genuine issue of material fact as to his qualified status, summary judgment would still be appropriate if Campbell posed "a direct threat to the health or safety of other individuals in the workplace." 42 U.S.C. § 12113(b). Union Pacific bears the burden of proving this defense. *See* 29 C.F.R. § 1630.15(b)(2).

### (1)    Risk of Harm

Under the ADA, "direct threat" means that there is a "significant risk of substantial harm to the health or safety of the individual or others that cannot be eliminated or reduced by reasonable accommodation." 29 C.F.R. § 1630.2(r).

Specific factors to be considered in the assessment include: (1) the duration of the risk; (2) the nature and severity of the potential harm; (3) the likelihood that the potential harm will occur; and (4) the imminence of the potential harm. *Id.*

Here, the parties dispute whether Campbell's continued employment in the Trainman position posed a direct threat to himself, others, or the public. In this case, as explained above, there is a genuine issue of material fact regarding whether Campbell is able to perform the essential functions of the Trainman job. Union Pacific argues that Campbell cannot perform the essential functions of the position safely, and thus posed a direct threat to the safety of himself and others due to an increased risk of slipping or falling. Dkt. 21-1 at 13-14. This argument rests on the expert medical opinions of Dr. Holland and Dr. Hegmann. *See* Dkt. 21-5 at 58-59, 62; Dkt. 21-14 at 46, 51.

Campbell's experts disagree. Campbell's expert, Robert Leimkuehler, a certified and licensed prosthetist orthotist, concluded that Campbell's prosthesis did not limit his ability to lift 25, 50 or even 85 pounds as required for the Trainman position, nor does it impair his ability to climb ladders or walk on uneven terrain. Dkt. 25-4 at 3-4. A second expert, Dr. Trangle, asserts that Campbell should have been able to perform the activities of a Trainman without restriction. *Id.*

MEMORANDUM DECISION AND ORDER - 21

When evaluating a direct threat defense, a court must first determine "whether the employer has demonstrated that the employee cannot perform the job without a significant risk of harm." *See* 29 C.F.R. § 1630.2(r); *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1248 (9th Cir. 1999). The Court finds that there is a genuine issue of fact regarding whether Campbell posed a direct threat in this case. The parties have presented conflicting expert testimony on the question of Campbell's ability to perform the job without significant risk of harm.  This is sufficient to create a genuine issue of disputed fact. *See Thomas*, 42 F.3d at 1270.

### (2)      Individualized Assessment

Employers must make an individualized assessment to determine whether an individual has a "present ability to safely perform the essential functions of the job." 29 C.F.R. § 1630.2(r).  The direct threat assessment must be "based on a reasonable medical judgment that relies on the most current medical knowledge and/or on the best available objective evidence." *Id.* Factors to be considered in the assessment include: (1) the duration of the risk; (2) the nature and severity of the potential harm; (3) the likelihood that the potential harm will occur; and (4) the imminence of the potential harm. *Id.*

The parties dispute the sufficiency of the evidence Union Pacific relied on in assessing whether Campbell posed a direct threat to the health or safety of others.

Union Pacific argues that they conducted an individualized review of Campbell's ability to safely perform the essential functions of the Trainman position. Dkt. 21-1 at 12-13. Union Pacific's position is supported by the opinion of its two expert witnesses, Dr. Holland and Dr. Hegmann. *See* Dkt. 21-5 at 58-59, 62; Dkt. 21-14 at 46, 51. Campbell critiques Union Pacific's assessment as deficient for failing to use the best available medical evidence. Dkt. 25 at 15-16. Campbell's expert witness, Dr. Trangle, points out that Dr. Holland never examined Campbell or subjected him to field testing or a functional capacity evaluation to evaluate his ability to work in the Trainman position. *Id.* Dr. Trangle further asserts that in this case, the failure to examine Campbell or conduct either a functional capacity test or a field test was contrary to accepted and standard practice in the field of occupational medicine. Dkt. 25-8 at 11.

The Court finds that there is a triable issue of fact regarding whether Union Pacific conducted a sufficiently individualized assessment of Campbell's ability to perform the essential functions of the Trainman position. The record presents a "battle of the experts" about whether Dr. Holland relied on the best available objective evidence. It is not a district court's function on summary judgment to "resolve an issue of fact based on conflicting expert testimony. *Scharf v. U.S. Atty Gen.*, 597 F.2d 1240, 1243 (9th Cir. 1979). Campbell's expert opinion evidence "is

itself sufficient to create a genuine issue of disputed fact" as to whether Union

Pacific's decision that Campbell posed a direct threat was "based on a reasonable

medical judgment that relies on the most current medical knowledge and/or on the

best available objective evidence." *Thomas*, 42 F.3d at 1270; 29 C.F.R.

§ 1630.2(r).

### E.      Conclusion

As explained above, there are disputed issues of material fact as to whether

(1) Campbell is a qualified individual, (2) Union Pacific engaged in the interactive

process, (3) a reasonable accommodation is available that would allow Campbell

to safely perform the essential functions of the Trainman job, and (4) Campbell's

employment as a Trainman would pose a direct threat to the safety of others in the

workplace. Therefore, summary judgment is denied.

**ORDER**

**IT IS ORDERED that:**

1.      Defendant's Motion for Summary Judgment (Dkt. 21) is **DENIED**.



DATED: September 4, 2020

_____

B. Lynn Winmill

U.S. District Court Judge