James H. Kaster (MN #53946)
Lucas J. Kaster (MN #396251)
**NICHOLS KASTER, PLLP**
80 South Eighth Street
4700 IDS Center
Minneapolis, MN 55402
Telephone: (612) 256-3200
Fax: (612) 338-4878
kaster@nka.com
lkaster@nka.com

Erika Birch (Bar No. 7831)
T. Guy Hallam Jr. (Bar No. 6101)
**STRINDBERG & SCHOLNICK, LLC**
1516 West Hays Street
Boise, ID 83702
Telephone: (208) 336-1788
Fax: (208) 287-3708
erika@idahojobjustice.com
guy@idahojobjustice.com

**ATTORNEYS FOR PLAINTIFF**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| THOMAS CAMPBELL,<br><br>                    Plaintiff,<br><br>vs.<br><br>UNION PACIFIC RAILROAD CO.,<br><br>                    Defendant. | Case No. 4:18-CV-00522-BLW<br><br><br>**PLAINTIFF'S RESPONSE TO DEFENDANT'S BRIEF OPPOSING CARMAN JURY INSTRUCTION [ECF NO. 92]** |

1

**INTRODUCTION**

In yet another attempt to relitigate summary judgment during trial, and in a brand-new argument, Defendant asserts that it cannot be held liable for the commercial drivers license ("CDL") restriction imposed by Dr. John Holland because the restriction was based upon a regulation adopted by the Federal Motor Carrier Safety Administration ("FMCSA"). (Dkt. 92.) Once again, however, Defendant's position is a misrepresentation of the facts in this case and the applicable law.

The Court should deny Defendant's motion for three reasons: (1) Dr. Holland's deposition testimony shows Defendant did not rely on the FMSCA while imposing work restrictions on Plaintiff; (2) Defendant's case, *Albertson's Inc. v. Kirkingburg*, 527 U.S. 555 (1999), is not applicable to Plaintiff who is entitled to obtain a CDL under DOT regulations; and (3) the final determination of the appropriateness of the restriction is an issue for the jury to decide.

**ARGUMENT**

**I.      Dr. Holland's Deposition Testimony Shows Defendant Did Not Rely on the FMSCA for Plaintiff's Work Restrictions.**

First, Defendant's position misrepresents the facts in this case. Dr. Holland unequivocally testified in his depositions that he <u>did not</u> rely on the FMCSA guidelines when imposing the work restrictions against Mr. Campbell:

> Q.      Okay. So you, in this particular case, did not look to the FMCSA guidelines; is that correct?
>
> A.      That's correct. **<u>I did not</u>**.

(Dkt. 21-7 at 9:2-5) (emphasis added).

Dr. Holland went on to explain that the FMCSA guidelines do not even apply to Mr. Campbell's situation:

Q.      Okay. Is there a reason you did not?

A.      Well, in general, the way the FMCSA guidelines work is a lot of the conditions we're concerned about with drivers are things that cause sudden incapacitation where the person otherwise seems fine, they don't seem to have any functional impairment, and then they pass out or they have sudden incapacitation. So these are things like seizures or heart attacks. And so the FMCSA guidelines are particularly good about giving guidance on that. On a lot of the things that are more functional impairment, so limitations, they'll pretty much -- well, often they say to do an individualized evaluation, and I find that more useful than just relying on guidelines for that case. So in the case with Mr. Campbell, it appeared what was really needed was to sort of have an individualized assessment of his capa- -- you the managers and then to use that as a basis for the decision. So I -- **I didn't refer to the FMCSA guidelines**.

(*Id.* at 9:6-10:4) (emphasis added).

In his later expert deposition, Dr. Holland further admitted that the decision whether he relies on or consults the FMCSA when doing a fitness for duty review is a discretionary decision made by him and the Health and Medical team on a case-by-case basis, and there are no written guidelines for how to make the decision:

Q.      So do you apply the FMCSA standards in every case?

A.      I don't.

Q.      Who decides?

A.      Well, it's something that I and – if it's -- I'll talk to our other associate medical directors too if it's their case. But we'll decide certain cases. There's a lot of information and good information and evidence in FMCSA, and -- and we follow them fairly closely. There's sometimes where FMCSA has minimal guidance or doesn't specifically deal with a condition, and then we will work with a consultant. We'll get other medical literature. And so I think it's -- I'll discuss it with my consultants. I'll discuss it with the chief medical officer -- I mean, excuse me, associate medical directors. We'll come to a decision. And ultimately I'm responsible for making -- determining what the decision would be, but it's usually -- have input from others.

Q.      Are there any guidelines that we can look to that someone can say are objective guidelines on when you look at the FMCSA and when you don't?

A.    No, I don't have a specific document that states that. I think I just stated what the process is, and we'll -- so there's no specific written guideline about it.

(Dkt. 21-5 at 46:13-47:15.)

Dr. Holland's testimony makes clear that he did not rely on the FMCSA guidelines in this case, and Defendant had no standard process or guidelines for when and how to consult or use the FMCSA regulations as to Plaintiff. As a result, Defendant's arguments are without merit.

## II.    *Albertson's* is Not Applicable Because Plaintiff Is Allowed to Obtain a CDL Under Adopted Safety-Based DOT Regulations.

Second, Defendant's position that it cannot be held liable under *Albertson's Inc. v. Kirkingburg*, 527 U.S. 555 (1999) is a misrepresentation of the applicable law. In *Albertson's*, the employee alleging disability discrimination was a commercial truck driver whose entire job made him subject to Federal Highway Administration regulations for obtaining and maintaining a CDL. *Id.* at 55. The employee sought certification for this CDL through an "experimental program" that was otherwise at odds with the applicable regulations and that had not been subjected to the same scrutiny as the already-adopted regulations. *See id.* at 557. Thus, what the claimant in *Albertson's* effectively requested was that the court conclude that the employer was under an affirmative duty under one federal law, the ADA, to violate another federal regulatory scheme, the Federal Highway Administration regulations. *Id.* at 577–88. The Supreme Court declined to do so. *Id.*

Not so here. The lynchpin of the Supreme Court's decision in *Albertson's* was that the "experimental program" at issue had "no evidentiary basis for concluding that the pre-existing standards could be lowered consistently with public safety." *Id.* at 574. But crucially, the regulation at issue here—49 C.F.R. § 391.49—has been subjected to exactly the safety-based evidentiary analysis lacking in the "experimental program" in *Albertson's*. Indeed, prior to adopting the current iteration of the regulation, the Federal Highway Administration reviewed and concluded that it

was equally as safe to allow individuals, like Plaintiff, to obtain CDLs under § 391.49 as was it for the general population to drive. *See* 48 Fed. Reg. 38483-01, 1983 WL 119961, at *38483 (Aug. 24, 1983) ("[A]ccident statistics do not indicate that drivers who have suffered the loss or impairment of a limb and who are granted waivers are less safe than nonhandicapped drivers."). *Albertson's*, thus, is not applicable.

## III.    The Carman Position's Safety Requirements Are a Jury Issue.

Finally, even assuming for the sake of argument that Defendant can now assert that the FMSCA regulations did apply to Plaintiff, it is squarely a fact issue for the jury. In fact, Defendant, in a last-dich effort to exclude evidence pertaining to the Carman position, once again asks the Court to superimpose its safety-based defenses as an issue of ADA qualification. *But see Campbell v. Union Pacific R.R. Co.*, 2020 WL 5300734, at *5 (D. Idaho Sept. 4, 2020). It remains, however, a matter of settled law in the Ninth Circuit that Defendant's decision to impose a standard that excluded Plaintiff based on his disability is not an issue of qualification, but instead of Defendant's defenses.[1] *See Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 990 (9th Cir. 2007) ("The [ADA] does not require that a person meet each of an employer's established 'qualification standards,' however, to show that he is 'qualified.' And, indeed, it would make little sense to require an ADA plaintiff to show that he meets a qualification standard that he undisputedly cannot meet because of his disability and that forms the very basis of his discrimination challenge."). This viability of this defense, moreover, is a fact issue for the jury. *Id.* at 998 (as to ADA defenses, employer's

---

[1] And, even if the Court were inclined to rule that the CDL restriction pertains to Plaintiff's qualifications under the ADA, the issue would remain for the jury to decide.  Namely, the jury would need to weigh whether the requirement, which Defendant admits applied to only "some" Carman/Welders (Dkt. 92 at 3), was actually an essential function of the job placement for Plaintiff in 2019. *See* 42 U.S.C. § 12111(1) (employer's job description a "consideration" but not exclusive consideration); Dkt. 45 at 8 (Pl.'s Trial Brief).

reliance on FMSCA regulations was "a factual question" left to the "fact finder to determine how much weight to give such evidence.")

Moreover, the evidence at trial has been clear: Defendant's approval is required for Plaintiff to obtain a CDL that he could use for his employment with Defendant. Dr. Holland testified that, in his opinion, employees who have been hired by Defendant have been issued a CDL when he believed they should not have been, and thus Defendant requires that all CDL's be approved through its licensing department.

Dr. Holland also testified, and the evidence has shown, that Defendant restricted Plaintiff from testing for a CDL, including prohibiting Plaintiff from taking a Special Performance Evaluation ("SPE") under 49 CFR § 391.41. Even after a fellow doctor within the Health and Medical Services department questioned Dr. Holland about why Plaintiff was restricted from taking the CDL exam, and specifically acknowledged that Plaintiff was eligible for the SPE test, Dr. Holland refused to allow Plaintiff the opportunity. Dr. Holland not only restricted Plaintiff from taking the test, but then added a separate restriction against Plaintiff that prevented him from driving commercial vehicles. As such, even if Plaintiff could have obtained a CDL separate from Defendant (which he could not if he wanted to use it while at work with Defendant), he still would have been prevented from driving commercial vehicles under Dr. Holland's restrictions. It is these restrictions that Plaintiff contends was discriminatory and a failure to accommodate, and which have been litigated by the parties in depositions, experts reports and summary judgment since 2019. Dr. Holland's refusal to grant Plaintiff an SPE clearly permitted under the FMCSA is evidence of that discrimination and failure to accommodate and should be submitted to the jury.

## CONCLUSION

For the above reasons, Plaintiff respectfully requests the Court deny Defendant's request and adopt Plaintiff's proposed jury instructions as to the Carman Position.

DATED this 13th day of April, 2021.

**NICHOLS KASTER PLLP**

s/Lucas J. Kaster
James H. Kaster (MN #53946)
kaster@nka.com
Lucas J. Kaster (MN #396251)
lkaster@nka.com
80 South Eighth Street
4700 IDS Center
Minneapolis, MN 55402
Telephone: (612) 256-3200
Fax: (612) 338-4878

**STRINDBERG & SCHOLNICK, LLC**

Erika Birch (Bar No. 7831)
erika@idahojobjustice.com
T. Guy Hallam Jr. (Bar No. 6101)
guy@idahojobjustice.com
1516 West Hays Street
Boise, ID 83702
Telephone: (208) 336-1788
Fax: (208) 287-3708

**ATTORNEYS FOR PLAINTIFF**

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 13th day of April, 2021 I filed the foregoing document electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Debora Kristensen Grasham - dkk@givenspursley.com

Kersti H. Kennedy - KerstiKennedy@GivensPursley.com

Scott P. Moore – spmoore@bairdholm.com

AND I FURTHER CERTIFY that on such date I served the foregoing on the following non-CM/ECF Registered Participants in the manner indicated:

NONE.

s/Lucas J. Kaster
Lucas J. Kaster